IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA,
PITTSBURGH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | 2:12-CR-92-CB |
| | § | |
| MAYANK MISHRA | § | HON. CATHY BISSOON |

DEFENDANT MAYANK MISHKA'S SECOND AMENDED MOTION TO SUPPRESS ALL FRUITS OF THE SEARCHES OF 1407 MIDDLE ROAD AND 101 TIMBERWOOD DRIVE

TO THE HONORABLE CATHY BISSOON:

DEFENDANT MAYANK MISHRA, through undersigned Counsel, and pursuant to the Fourth, Fifth, and Sixth Amendments, moves the Court to suppress all evidence seized, all observations made, and all statements allegedly made by Mishra during searches of the residences located at 1407 Middle Road and 101 Timberwood Drive.

I. The Search of 1407 Middle Road Police claim to have been granted permission to enter 1407 Middle Road, the home of Mayank Mishra. Mishra claims that he only permitted the police to enter when they informed him that a search warrant was on the way. In rapid succession, police informed Mishra that they had a search warrant for his store and had just executed a warrant at his parent's house located at 101 Timberwood Drive in Glenshaw. They

requested and obtained a key to the store to facilitate entry without causing damage. They conducted a sweep of the residence.

When the police told Mishra that a warrant was on the way, Mishra interpreted that statement as meaning that a warrant had been issued but not yet delivered. In fact, police had no warrant for Mishra's home, and expressly relied upon their observations while illegally inside to obtain the warrant they ultimately received.

### A. The Consent for the Initial Warrantless Entry Was Involuntary

When it relies upon consent to justify a search, the government bears the burden of proving the consent was voluntary.[1] To be voluntary, consent must be more than mere acquiescence to a claim of lawful authority.[2] In *Bumper* v. *North Carolina*, the Court held that consent provided after police falsely claim to have a search warrant is not effective. *Bumper* forecloses reliance upon Mishra's consent to justify the initial entry into his home.

It is well-established that when evidence shows that a person believes she must consent to a search, this "weighs heavily against a finding that consent was voluntarily given."[3] "And when that belief stems directly from

---

[1] *United States* v. *Munoz*, ____ F.Supp. ___ , 2013 WL 6638922 (SDNY 2013), *citing SchnecMoth v. Bustamonte*, 412 U.S. 218,93 S.Ct. 2041,36 L.Ed.2d 854 (1973).
[2] *Bumper* v. *North Carolina,* 391 U.S. 543,88 S.Ct. 1788,20 L.Ed.2d 797 (1968).
[3] *United States* v. *Molt,* 589 F.2d 1247,1251 (3d Cir.1978); *see Schnecldoth,* 412 U.S. at 233-34,93

misrepresentations made by government agents, however innocently made, the consent becomes even more questionable."[4] Statements by law enforcement officers suggesting that acquiring a warrant would be a foregone conclusion might convey an impression that the individual has no choice but to consent.[5] Under such circumstances, consent might be vitiated where probable cause to support the issuance of a warrant is, in fact, lacking.[6] Even if the police believed in good faith that they would obtain a warrant, an honest but mistaken claim of lawful authority to search invalidates consent and requires exclusion of the resulting evidence.[7]

In this case, the police falsely claimed that a warrant was on its way, and this claim was bolstered by their truthful assertions that warrants had been executed at Mishra's parents' residence (101 Timberwood Drive, Glenshaw, PA) and for Mishra's store. A reasonable person in Mishra's position would believe that denying consent was futile.

---

S.Ct. 2041 (citing *Bumper* v. *North Carolina,* 391 U.S. 543,548-49,88 S.Ct. 1788,20 L.Ed.2d 797 (1968)).

[4] *Molt,* 589 F.2d at 1251-52 (finding consent involuntary where agents misrepresented their statutory authority).

[5] *United States* v. *Sebetich,* 776 F.2d 412,425 (3d Cir.1985).

[6] *Id.* at 424.

[7] *See Molt,* 589 F.2d at 1251-52 (consent vitiated when customs agents innocently but incorrectly asserted the legal authority to conduct a warrantless search of a business's records); United States v. Vazquez, 724 F.3d 15,18 (1st Cir.2013) (Defendant's acquiescence to warrantless search of her home was invalid if FBI obtained it by misrepresenting that a warrantless search of her home could be lawfully conducted without her consent; defendant's consent could not be justified if search was secured by a good faith but erroneous representation that a search would ensue anyhow).

Moreover, the search of the Timberwood Drive residence, a location where Mishra also resided, was conducted pursuant to a warrant that was issued without probable cause (see Part II, below). To determine whether consent was voluntary, courts "examin[e] the totality of the circumstances."[8] The fact that a warrant had been issued for another family residence, when police lacked probable cause to connect either residence to any allegedly unlawful activity on Mishra's part, is another circumstance that would suggest that denying consent would be futile.

Additionally, the presence of multiple officers and the performance of an illegal protective sweep render the consent involuntary. To those untrained in Fourth Amendment subtleties, the presence of multiple officers entering one's home, claiming they have a warrant for the person's business, having just come from execution of a warrant at the home of the person's parents, entering the home to sweep it, and claiming that a warrant is on the way all combine to render any consent to search involuntary.[9]

**B. The Illegal Sweep**

Once inside the residence, police performed a protective sweep during which observations were made which were incorporated into their affidavit in

---

s *United States* **v.** *Stabile,* 633 F.3d 219,230-31 (3d Cir.2011)

[9] *See, e.g. United States* **v.** *Gaines, unpublished* 2004 WL 2634460 (USDC Delaware 2004) (holding that the prior illegal entry tainted the subsequently given consent).

support of a search warrant. The inclusion of evidence gleaned from the prior illegal entry and sweep tainted the search warrant because the protective sweep was not justified by the ordinary rationale for a sweep under *Maryland v. Buie.*[10] The sweep was not incident to execution of an in home arrest warrant, and no reasonable suspicion or probable cause existed to believe anyone else was present or dangerous when the police arrived.

In *Buie,* the Court approved a limited, cursory inspection of places where armed and dangerous persons could be hiding. This type of limited search has only been authorized by the Court in two circumstances. First, incident to the execution of an in home arrest warrant, police may search without warrant, probable cause, or reasonable suspicion, those areas immediately adjoining the place of arrest. Second, police may sweep any other areas if they have specific articulable facts that the areas being searched may harbor a person who poses a danger to those present at the arrest.[11]

Neither *Buie* condition was met in the instant case. The entry was not pursuant to execution of an arrest warrant in Mishra's home. No reasonable suspicion existed to fear others. There was no indication that any person other than Mishra was present.[12]

---

[10] 494 U.S. 325, 110 S.Ct. 2093,108 L.Ed.2d 276 (1990). (1990)

[11] *United States* **v.** *White,* ____ F.3d. _____ , 2014 WL1408748 (3rd Cir. 2014)

[12] *See, e.g., United States* **v.** *Montgomery, unpublished* 2008 WL 4682803 (USDC MDPA 2008) (invalidating a protective sweep where police saw no other individual enter or exit the apartment

**C. The untainted portions of the warrant do not establish probable cause.**

Other than observations made by officers who entered Mishra's residence prior to obtaining the warrant,[13] the warrant affidavit provides no basis for finding a fair probability that evidence would be found in the residence. The remainder of the affidavit describes Mishra's involvement in the sales of legal products, namely, glassine bags and legal substances used as cutting agents, from a retail store ("Rock America") located in Northway Mall ("The Shoppes at Northway").[14] These allegations arose from police interviews with individuals arrested for drug trafficking, and from surveillance and controlled buys conducted at the mall location. All such sales took place at the mall location. There is no information, from any source or from police surveillance, of any transactions or other activity related to sales of packaging materials or cutting agents occurring at Mishra's residence.

The affidavit also reports that Mishra had a bank account with a low

---

prior to their entry); *United States* **v.** *Mark, Slip Op.* 2009 WL 5286598 (USDC Virgin Islands 2009) (protective sweep not justified even where police saw another person in the home when they were not able to articulate facts that such person posed a danger to them); *Malik* **v.** *Hannah,* 799 F.Supp.2d 355 (granting summary judgment against police and the City of Camden in a 1983 case based in part on an illegal protective sweep of plaintiffs upstairs bedroom during the arrest of another person downstairs).

[13] Warrant Affidavit 1f94.

[14] Warrant Affidavit |]f26 - 50,57-82.

balance and no activity during the previous year.[15] The DEA learned of the account by obtaining a "mail cover" for the Timberwood Drive residence and thereafter subpoenaed account statements. The affiant suggests that the inactive account indicates that evidence of money laundering is likely to be found in the residence. The affidavit does not indicate, however, whether Mishra held any other personal or business bank accounts.

To find probable cause to search, there needs to be a "fair probability that contraband or evidence of a crime will be found in a particular place."[16] Because this inquiry focuses on the relation of criminal conduct to a particular location and not on the activities of any particular person, "probable cause to arrest does not automatically provide probable cause to search the arrestee's home."[17] While direct evidence linking the residence to criminal activity is not necessarily required to establish probable cause, there must be a sufficient accumulation of circumstantial evidence that together indicates a fair probability of the presence of contraband at the home of the arrested.[18]

The Third Circuit has recognized that "it is a reasonable inference to conclude that drug dealers often store evidence of drug crimes in their

---

15 Warrant Affidavit U 92.

16 *Illinois v. Gates,* 462 U.S. 213,238, 103 S.Ct. 2317,76 L.Ed.2d 527 (1983).

17 *United States* v. *Jones*, 994 F.2d 1051, 1055 (3d Cir.1993).

18 *United States* v. *Burton*, 288 F.3d 91,103 (3rd Cir. 2002).

residences."[19] However, this inference does not apply with equal force in this case because there is no indication in the affidavit that Mishra ever possessed or distributed illegal drugs. Instead, the affidavit describes the sales of legal products from a store in a mall. Because legal inventory is likely to be stored at the retail location, and records of sales of legal products are also likely at the store (or perhaps with an accountant), there is no reasonable inference that such evidence would be concealed at a residence.

As the Third Circuit explained in *United States* v. *Whitner*[20]*:*

> The rationale underlying the foregoing line of cases is that evidence associated with drug dealing needs to be stored somewhere, and that a dealer will have the opportunity to conceal it in his home. After all, a dealer logically could conclude that his residence is the best, and probably the only, location to store items such as records of illicit activity, phone books, address books, large amounts of cash, assets purchased with proceeds of drug transactions, guns to protect drugs and cash, and large quantities of drugs to be sold.

In contrast with a drug dealer, a retailer of legal products with a store does not need to conceal contraband and records of illicit activity in his residence, and a residence is not the "only location" available for storing inventory and sales records.

The Third Circuit has instructed that probable cause to search a residence can be inferred by "considering the type of crime, the nature of the

---

***19*** *Id* at 104.

**20** 219 F.3d 289,298 (3rd Cir. 2000).

items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property."[21] The conduct described in the affidavit - selling legal products from a retail store in a mall - does not support a reasonable inference that evidence of this conduct would be concealed in a residence. As the Third Circuit clarified in *United States* v. *Burton*[22]*:*

> Of course, even though we have recognized that it is a reasonable inference to conclude that drug dealers often store evidence of drug crimes in their residences, application of this inference is based on evidence supporting three preliminary premises: (1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's drug activities.

In this case, there is no evidence that Mishra possessed or distributed contraband. Because Mishra's alleged conduct bears no resemblance to that of a typical drug dealer, there is no inference that contraband and other evidence would be concealed in his residence.

The only other evidence purporting to establish probable cause to search the residence is that the DEA discovered, through a "mail cover," that Mishra had a bank account with a low balance and no recent activity. But the affidavit does not indicate whether Mishra held any other personal or business

---

**21** *Id*. at 297, quoting *United States v. Jones*, 994 F.2d 1051, 1057 (3d Cir.1993).
**22** 288 F.3d 91,104 (3rd Cir. 2002).

bank accounts. Moreover, it is now common for account holders to conduct transactions and receive statements entirely online, rather than through the mail; thus, one could not draw any reliable inferences about a person's banking activity from the absence of mailed bank statements. The mere fact that Mishra held one inactive account is not sufficient to establish probable cause that evidence of money laundering would be located at his residence.

Accordingly, the warrant affidavit fails to establish probable cause.

## II. The Warrant for the Timberwood Drive Residence Lacked Probable Cause

Mishra asserts that the warrant for the search of 101 Timberwood Drive was not supported by probable cause. This residence, like the residence at 1407 Middle Road, is owned by Mishra's parents, but Mishra stays at both residences, and therefore has standing to challenge both searches.[23]

The substance of the warrant affidavit for the Timberwood Drive residence is virtually identical to that in affidavit for the Middle Road residence. Neither affidavit establishes a sufficient link between the residences and sales conducted at Mishra's retail business. Mishra adopts all arguments set forth in Part I - C above, which are equally applicable with

[23] See Warrant Affidavit at f 106, describing surveillance establishing that Mishra stays at 101 Timberwood Drive.

regard to the warrant for the Timberwood Drive residence.

## CONCLUSION

The initial consent to enter the residence at 1407 Middle Road was not voluntary, but rather was granted in mere acquiescence to the police claim that warrant was on the way. The sweep was not within the scope of *Buie.* The only particularized evidence even hinting at probable cause to search 1407 Middle Road was derived from the involuntary consent and from the illegal sweep. Likewise, the supporting affidavit for the search warrant for the Timberwood Drive residence did not state probable cause. As such, the Court should order all fruits of the warrants suppressed

WHEREFORE PREMISES CONSIDERED, Defendant prays that the Court grant a hearing on the motion and order all fruit of the searches suppressed.

Respectfully Submitted,

/s/ Norman Silverman
Norman Silverman
917 Franklin, 4th Floor
Houston, Texas 77002
(713) 526-1515
(713) 526-1798 Fax
Lawyemorm@msn. com
Texas Bar # 00792207

Appearing Pro Hac Vice
through Local Counsel:

Sally Frick 437 Grant St.
1601 Frick Building
Pittsburgh, Pennsylvania
15219 (412) 261-3340 Fax
(412) 261-9211
safattyusa@netscape.net

Certificate of Conference

This is a motion to suppress. The government is presumed opposed.

/s/ Norman Silverman
Norman Silverman

Certificate of Service

On October 9, 2014, this Motion was electronically file via the ECF system. A copy was contemporaneously forwarded to the government via the ECF system.

/s/ Norman Silverman
Norman Silverman