IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA § | 2:12-CR-00092-CB-2 | |
| § | | |
| vs. § | | |
| § | | |
| MAYANK MISHRA § | HON. CATHY BISSOON | |

MOTION TO DISMISS

DEFENDANT MAYANK MISHRA, through undersigned Counsel, and pursuant to the Fifth, Sixth, and Fourteenth Amendments, moves the Court to order the indictment dismissed. Dismissal is required because, by deporting Rajeshwari Mishra, the government has stripped Mayank of his right to compulsory process, his right to confrontation, his right to due process, and his right to put on a defense.

Review of government arguments over time reveals an increasing level of frustration and animosity directed at the Mishra family as a whole. The government quotes Judge Cindrich, the judge who presided over Akhil's paraphernalia trial to call Akhil, "*defiant and obstinate*". The government cites things other prosecutors have said about Akhil and concludes that Akhil's convictions and jail sentences "did not deter him from continuing to sell drug paraphernalia and to participate in

1

conspiracies to distribute heroin." *See, Pacer Document 268-1 in United States v. Akihl Mishra*, Criminal Case Number. 13-268.

In truth and in fact: Akhil's previous charges never included any heroin conspiracy; were based upon items other than stamp bags and adulterants, such as pipes and bongs; and were decided upon entirely different issues and claims than are now at bar. But, since the government choses to not let the truth interfere with a good argument, its probably also worth noting that Akhil is not Mayank, and corruption of the blood is not a viable theory of prosecution.

The lather the government has gotten itself into has not just caused it to paint facts with a roller; it has also caused the government to misstate the law to this Court.

Six years after its decision in *Valenzuala-Bernal*[1], the Court decided *Arizona v. Youngblood.*[2] Youngblood held that bad faith must be shown in cases where the police have *failed to preserve potentially useful evidence.*

Mishra has demonstrated the usefulness of Rajeshwari's testimony via the proffer set out in his motion to parole Rajeshwari into

---
[1] 102 S.Ct.3440.
[2] 109 S.Ct.333

2

the country. This method of proof is expressly authorized in *Valenzuela-Bernal.* The proffer conclusively demonstrates the exculpatory nature of Rajeshwari's testimony and demonstrates that she alone could provide the testimony. No showing of bad faith is required under these circumstances.

Moreover, this was no - *failure to preserve* -case. Rajeshwari had lived in Pittsburgh for more than fourteen years since her conviction and sentence of five months house arrest. She never moved, secreted herself, nor became unavailable. She traveled abroad and re-entered the United States in 2007 without incident.

Agent Hedges acknowledged that it was he who notified Agent Fell at immigration of her presence. Hedges told Fell that the Mishra family continued to be involved, and were presently involved, in the sale of paraphernalia. Moreover, Fell incorporated details of Hedge's allegations in his Notice to Appear, Bond, and Custody Determination Sheet, *See attached Exhibit 1*, and in his I-213, *see attached Exhibit Two*.

To the extent it was necessary to establish bad faith, it is established by the following: (1) the timing of Rajeshwari's deportation on the eve of Mayank's trial, after a prolonged period of inattention to her immigration case by the authorities, (2) the animus apparent on the

face of the government's pleadings discussing the Mishra family, (3) the government's practice of blaming all members of the Mishra family for the actions of one another, (4) the timing of the deportation action relative to the arrest of Akhil, the only other witness familiar with the business activities of Rock America and the history of the government's persecution of the Mishras (5) the fact that Rajeshwari was presently uncharged with any current violations of law, (6) the fact that Rajeshwari had not been accused of any criminal act since completion of her five month sentence, (7) the fact that, in response to the proffer submitted in support of Mayank's motion to parole Rajeshwari, the government actually threatened her with prosecution,[3] (8) the fact that

---

[3] Such threats are generally viewed with disfavor in the Third Circuit, *See, United States v. Morrison*, 535 F.2d 223 (3rd Cir. 1976) reversing conviction where prosecutor warned defense witness of her rights against self-incrimination. Circuit Court concluded that, to the extent such warnings were necessary, giving them was the responsibility of the Court, not the government. Also, finding that while good faith might be a defense to witness tampering, it was no defense to the attendant violation to the accused's rights.

The precise threat in this case was even worse than in *Morrison*, "If Rajeshwari returns to the United States and is called to testify as counsel represents she would at Defendant's trial, she would need an attorney because the government has contemplated charging her already. Any attorney likely would counsel her to invoke her Fifth Amendment right against self-incrmination, a factor which suggests that she would offer no testimony at all, much less material, favorable, vital testimony…And assuming that Rajeshwari did testify as outlined in Defendant's proffer despite her own best interests, she would be forced to admit on cross-exmaintion that she had been in the drug paraphernalia business for decades, that a previous conviction did not prevent her or Akhil from continuing to be in business, that she did not report the sales of the bags and the cut on her tax returns, and that

4

the government failed to inform Agent Fell that Rajeshwari refused to sell "cut," to one its informant's (9) the fact that the government omitted Rajeshwari's refusal to sell "cut" to one of its informants in its response to Mayank's motion to parole Rajeshwari, (10) the fact that the government only deported Rajeshwari after she requested return of her wedding jewelry, (11) the fact that the government deported Rajeshwari without notice to the defense, and (12) that Hedges allegedly interviewed Rajeshwari, that the government sent the defense a letter indicating that it had included the 302 documenting the interview in the same envelope. In fact, no 302 was present in the envelope. To date, no 302 has been provided to the defense.

In its defense, the government attempts: (1) to blame the defense for not telling the government that it planned to use Rajeshwari as a witness; (2) to suggest that Agent Hedges interviewed Rajeshwari and determined she had no testimony helpful to Mayank; (3) to blame the defense for not making an administrative application to Parole Rajeshwari, when the government knows full well that it is the keeper of the keys[4]; (4) to suggest that Rajeshwari's testimony should be

---

she continued to sell paraphernalia even after Defendant and Akhil had been arrested."
[4] See, Court's Opinion Denying Mayank's Motion to Parole Rajeshwari.

presented by the defense via a videotape deposition made in India, and (5) for not requesting her return to the country sooner. Moreover, the government contends that counsel for Mishra was "cagey," in his honest answers to the Court

The defense replies that: (1) the defense had no obligation to inform the government of its intended witnesses before a witness list was due. Moreover, the defense saw no reason to notify the government that it intended to call Rajeshwari, because it did not know her removal was imminent. If FBI Agent Hedges claims not to have known she would be deported, just how is the defense supposed to have known; (2) with all respect to the government and Agent Hedges, neither Hedges nor the government are permitted to determine the field of helpful evidence for the defense. Moreover, the precedent in this Circuit eschews government witness summaries of evidence in favor of the actual evidence. *See, Young v. Kann*, 926 F.2d 1396 (3rd Cir. 1991) *citing Wolff v. McDonnell*, 418 U.S. 539 (1974) and holding that, even in the context of the limited rights attendant to incarcerated persons, summary of evidence by accusers is not sufficient and violates due process. (3) Having banished its sole remaining witness from the country, the government cavalierly concludes that a video recorded deposition is

good enough for the defense. That is wrong for the following reasons: (A) The witness oath has no teeth when administered to a witness beyond the reach of prosecution for perjury. The jury would obviously discount such testimony because there is no legal way to punish a witness who testifies falsely; (B) it is not possible for the jury to evaluate the demeanor of the witness in Court; (C) the jury will immediately be able to determine that this witness is treated differently than every other witness and every government witness; (D) compounding the difference in appearance from every other witness is the fact that this witness is the mother of the defendant, and (E) the government ought not be permitted to deprive the accused of confrontation and compulsory process and then capitalize on its deprivation. The government's proposals for video use make a mockery of the Fifth and Sixth Amendments and deprive defendant of the most fundamental elements of due process, the right to put on a defense, the right to call witnesses in his favor, the right to confront witnesses, and the right to equal jury evaluation of defense witnesses based upon equal manner of presentation of their testimony before the jury. There is no remedy other than production of this witness, in court, and under no threat or compulsion. Because the government has threatened the

witness, Defendant further moves the Court to order immunity for the witness, and for that order to not be disclosed to the jury.

   (5) Timeliness of the request based upon when the defense became aware of Rajeshwari's deportation:

The defense does not contend, as the government suggests, that it was wholly unaware of the deportation proceedings.

The defense was wholly unaware that Rajeshwari had been removed. In fact, on April 27, 2015, present counsel undertook computerized legal research into the validity of the deportation case and then sent case law to the lawyer representing Rajeshwari at the time. Attached hereto is the proof from *Westlaw Next* as to the dates and subject matter of Counsel's research efforts. *See, Exhibit 3*.Among the case law discovered by Counsel was *United States v. Fuentes*, 2007 WL 2264093 (5th Cir 2007) not reaching but criticizing government's argument that adulterants and dilutants were paraphernalia for purposes of application of aggravated felony enhancement provision of USC § 1326. This case read in harmony with *Rojas v. Attorney General,* 728 F.3d 203 (3rd Cir. 2013) which required that a controlled substance under state law also be one under federal law before the aggravated felony statute would be triggered, provided a colorable basis to contest

deportation. Defendant located cases contrary to his thesis and sent those to counsel as well. *See, Barma v. Holder*, 640 F.3d 749 (7th Cir. 2011); *Mellouli v. Holder*, 719 F.3d 995 (8th Cir.2013) and finally Counsel also sent *Moncrieff v. Holder*, 133 S.Ct. 1678 (2013) to Rajeshwari's lawyer so that he could argue that if possession of marijuana with intent to distribute was not an aggravated felony under the categorical approach, then neither was the sale of paraphernalia. Counsel believed that Rajeshwari would contest her deportation and that her lawyer would benefit from this research. Counsel further believed that Rajeshwari would appeal any adverse determination. Apparently, she did not. Had she followed the course, counsel believed she had followed, she would still be in the United States right now. Counsel had no way of knowing otherwise. Counsel now knows that Rajeshwari was represented by several different lawyers. Counsel understands that she retained a lawyer to prosecute her appeal. Counsel did not know that that lawyer failed to do so. Only the government was in a position to notify counsel of Rajeshwari's imminent removal. The government did not notify counsel.

     Now the government wants to tell counsel what to do so that it can avoid the sanction warranted by its misconduct: dismissal. The

government cannot fairly place the defense in the *Hobson'*s choice it has created. It is the government who must remedy the situation it has vindictively created.

Mayank Mishra humbly asked the Court to order the government to permit Rajeshwari to enter the Country to testify. The government wasn't asked to assist in the expense of her travel, house her while she was here, or take any other remedial step beyond granting her permission to enter the United States.

The government preferred to threaten her instead and to accuse counsel of sleeping on Mayank's rights. Prosecutors often argue that criminals chose where to commit crimes in an effort to justify the absence of witnesses. In this case, all actions were done right out in the open, in plain view, over the course of years. The only way to create the appearance that such actions were criminal was to affirmatively remove witnesses that would testify to the contrary.

The government has contrived to eliminate all witnesses to its multi-decade abuse of the Mishras. This Honorable Court's faithful application of the Fifth, Sixth, and Fourteenth Amendments is the only impediment to the success of this misadventure. Even should the Court not believe that the government connived or intended to place itself in

the *cat bird* seat it now occupies, dismissal is still the only adequate remedy in light of the clear materiality of Rajeshwari's testimony. No showing of bad faith is required.

For all the foregoing reasons, Defendant Mayank Mishra prays that the Court order the indictment dismissed.