# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 12-92 |
| | ) | |
| RICHARD BUSH, | ) | |
| MAYANK MISHRA, | ) | Judge Cathy Bissoon |
| | ) | |

## ORDER

Pursuant to its authority under 18 U.S.C. § 401, the Court finds Norman and Daphne Silverman in contempt of court for conduct during the trial of this matter. The Court hereby imposes monetary sanctions in the amount of $4,300 against Mr. Silverman as result of his contemptuous conduct and $1,000 against Mrs. Silverman as a result of her contemptuous conduct.

## Background

The Silverman's client, Mayank Mishra, was charged, in a three-defendant indictment, with conspiracy to distribute a kilogram or more of heroin in violation of 21 U.S.C. § 846. Doc. 106. Prior to the start of trial, and in response to witness and exhibit lists disclosed to the Government by Defendant Mishra's counsel, the Government filed a Notice of Evidentiary Issues (Doc. 285) asking the Court to make a number of findings regarding the relevancy of certain evidence. In response, the Court issued the following Order:

> ORDER. The Government's Notice of Evidentiary Issues ("Notice") (Doc. 285 ) hereby is construed as an Omnibus Motion in Limine. For the reasons set forth during the hearing of December 1, 2015, as well as for the reasons proffered by the government in its

Notice, which are incorporated herein by reference, the evidentiary issues raised therein are disposed of as follows: (1) The parties are precluded from arguing, implying, or offering any evidence that the government has vindictively or selectively prosecuted any defendant or any relative of any defendant and so the motion is GRANTED; (2) The parties are precluded from arguing, mentioning, implying, or adducing evidence regarding the government's charging decisions, including any other pending or completed case and so the motion is GRANTED; (3) The parties are precluded from arguing, implying, or offering evidence regarding the immigration status of any party, relative of any party, or witness and so the motion is GRANTED; (4) The parties are precluded from mentioning or raising any discovery disputes in the presence of the jury and so the motion is DENIED AS MOOT as Defendants represent to the Court they do not intend to engage in any such conduct; (5) Defendants are precluded from arguing, suggesting, eliciting testimony, or adducing evidence that the chemical diluents, stamp bags, and other materials seized during the government searches were "legal" to possess or sell and so the motion is GRANTED; (7) The Court will rely solely on the Third Circuit Model Jury Instruction to define reasonable doubt to the jury and all contrary definitions are precluded and so the motion is GRANTED. Given Defendant Mishra's counsel's statements and sentiments expressed during the December 1, 2015 hearing, counsel is put on notice that any efforts to circumvent these rulings before the jury will result in sanctions. Counsel for Defendant Mishra also is instructed to ensure that their witnesses must be informed of the Court's rulings on these issues prior to their testimony.

On December 3, 2015, due to Mr Silverman's conduct in during trial, specifically, questioning a Government witness about his compliance with a discovery provision of this Court's Pre-Trial Order -- despite Mr. Silverman having previously represented that he would not ask witnesses questions about discovery -- the Court amended the Order as follows:

AMENDED ORDER. The Court's Order dated 12/2/15 (Doc. 295) is hereby AMENDED as follows: the parties are precluded from mentioning or raising any discovery disputes or issues in the presence of the jury and the government's Notice requesting the same is GRANTED.

**Discussion**

A finding of criminal contempt requires a court to "consider the sensitive distinctions between zealous representation of a client's interests and contumacious interference with the orderly progress of trial court proceedings." Com. of Pa. v. Local Union 542, Int'l Union of Operating Engineers, 552 F.2d 498, 500-01 (3d Cir. 1977). "[A] direct order of the trial judge

2

fixes the limits of proper advocacy; the vigor permissible in representing a client's interests has never included the flouting of a judge's rulings." Dunn v. United States, 388 F.2d 511, 513 (10th Cir. 1968). "An attorney who, in deliberate disregard of seven direct and explicit orders by trial judge, pursues a course that he determines to be in best interests of his client, offends the dignity and authority of the court and thereby obstructs administration of justice." Local Union 542, 552 F.2d at 505-06 (internal citation omitted). See also United States v. Landes, 97 F.2d 378 (2d Cir. 1938) (Holding that an attorney who, notwithstanding court's passing upon admission of evidence, persistently continued in his remarks until his acts and words became a misbehavior in presence of the court, and who refused to take his seat although ordered to do so by judge, was properly found guilty of contempt of court with imposition of fine as a punishment); United States v. Griffin, 84 F.3d 820 (7th Cir. 1996) (Finding evidence supported finding counsel in direct criminal contempt of court where counsel attempted three times, during cross-examination, to ask question of witness that judge had prohibited, and requested witness to examine financial records in duplicitous and thinly veiled effort to evade court's ruling on permissible scope of cross-examination); United States v. Allocco, 994 F.2d 82 (2d Cir. 1993) (Holding criminal contempt proper where defense attorney repeatedly ignored trial court's warning to cease with certain line of questioning during cross-examination of government witness); In re Dellinger, 502 F.2d 813 (7th Cir. 1974) (Upholding a finding of criminal contempt where defense counsel violates court order by putting before the jury information that has been ruled inadmissible).

Here, the Court finds that Mr. Silverman's conduct far exceeded "the limits of proper advocacy." Over the course of the trial, Mr. Silverman displayed a lack of respect for the authority of the Court, a lack of respect for the jury's time and a seeming lack of understanding

3

of the judicial process. His violations of the Court's Pre-Trial Orders and in-court rulings began immediately and persisted throughout. During his opening argument, he attempted to redefine for the jury his understanding of drug conspiracy law. During a sidebar following that initial violation, it became apparent that Mr. Silverman had no intention of complying with any of the Court's directives. Accordingly, the Court again warned him that if his violative behavior continued, he would be sanctioned. Seemingly undeterred, this type of conduct continued for the remainder of the trial.

*Specific Violative Conduct*

Before addressing the conduct that specifically resulted in sanctions, a brief discussion of the type of behavior the Court endured is appropriate. Defendant Mishra's counsel failed to label in advance any exhibit that they intended to use in examining a witness. Defendant Mishra's counsel failed to have a working copy of the government's exhibits at hand such that when the government moved for admission of an exhibit, the Court, the jury and the Government had to wait until they were provided a copy by the Government and then wait while they read the document before determining whether to object. Mr. Silverman frequently continued with the same line or character of questioning after the Court sustained a non-form objection hoping, that if he rephrased it or added a "But" before the question, the Court would either not notice it or allow it. Individually, any of the aforementioned examples created undue delay and evidenced a lack of appreciation for the orderly administration of justice, but taken together Mr. Silverman's conduct created a genuine disruption and showed a fundamental lack of regard for the judicial process and this Court's authority.

After repeated warnings, the Court began imposing monetary sanctions. Initially, the Court fined Mr. Silverman $100 for each violation. When it became clear that $100 was insufficient as a deterrent, the Court raised the amount first to $200 and then ultimately to $1,000 for each violation. In addition to the pre-trial warnings contained in the Court's Orders, the Court warned Defendant Mishra's counsel twice in response to specific violations:

1. During Mr. Silverman's questioning of Government witness Detective Ian Barrett, Mr. Silverman asked a question suggesting that the Government's true motive in this case was the forfeiture of a large sum of money found at Defendant Mishra's residence, in direct violation of the Court's Order prohibiting any party from discussing the possible penalties in this case in front of the jury (Doc. 295). The Court warned Mr. Silverman that sanctions would result should his conduct continue to run afoul of the Court's orders and rulings.

2. During Mr. Silverman's questioning of Government witness Detective Ian Barrett, Mr. Silverman attempted to elicit a legal conclusion from the witness regarding the distinction between probable cause and reasonable doubt. After continuing to argue his position after the Court ruled on the issue, and after the Court ended the sidebar discussion on the issue, Mr. Silverman attempted to read into the record – outside the presence of the Court and the Government – his position on the issue, ostensibly using the Court's reporter as his own personal employee. The Court warned him sanctions would result should his conduct continue to run afoul of the Court's orders and rulings.

The violations resulting in sanctions were as follows:

1. During Mr. Silverman's questioning of Government witness Detective Ian Barrett, Mr. Silverman asked a question regarding whether drug paraphernalia was legal to possess, in direct violation of the Court's Order (Doc. 295) prohibiting any party from discussing the same. The Court imposed sanctions of $100.

2. Mr. Silverman attempted to admit into evidence a document that the Defense had not previously indicated to the Government that it intended use, in direct violation of the Court's Amended Pretrial Order (Doc. 209). The Court imposed sanctions in the amount of $200.

3. During Mr. Silverman's questioning of Government witness Detective Ian Barret, Mr. Silverman asked several questions regarding prior investigations of Defendant Mishra, implying and/or eliciting testimony that the Government has vindictively prosecuted Defendant Mishra, in violation of this Court's Order (Doc. 295). Mr. Silverman also asked questions regarding "other purposes" for heroin stamp bags and diluents, also in violation of this Court's Order (Doc. 295). Further, he asked questions during cross-examination that were outside the scope of direct examination after the Court ruled on the appropriate scope of cross-examination. This culmination of offenses resulted in the Government moving to sanction Mr. Silverman by revoking his *pro hac vice* status and putting him in jail. The Court ordered briefing on the issue and heard oral argument. The Court ruled from the bench and issued a written Order[1] (Doc. 309),

---

[1] In that Order, the Court made a number of observations regarding Mr. Silverman's conduct which are sufficiently relevant to be reproduced here: "Mr. Silverman has continually violated this Court's Orders, and at this point in the trial after having received numerous warnings, the Court can only view those violations as willful." Doc. 309 at 2. "Even after repeated Court warnings and clear explanations as to what constitutes a violation of this Court's Orders, Mr.

denying the government's motion to revoke Mr. Silverman's *pro hac vice* status and denying to put him jail due to Sixth Amendment concerns, instead fining him in the amount of $1,000.

4. During Mr. Silverman's cross-examination of Government witness Trooper Warfield, Mr. Silverman continued to ask the same question in a variety of ways after the Court sustained an objection. The Court imposed sanctions in the amount of $1,000.

5. During Mr. Silverman's cross-examination of Government witness DEA Agent Dorian Merlina, Mr. Silverman asked a question alluding to other pending proceedings against Mr. Mishra, in violation of this Court's Order (Doc. 295). The Court imposed sanctions in the amount of $1,000.

While Mr. Silverman's conduct constituted the majority of the violative behavior over the course of the trial, Mrs. Silverman is not without fault. Furthermore, Mr. Silverman's behavior is appropriately attributable to Mrs. Silverman. During the hearing on Mr. Silverman's *pro hac vice* status, Mrs. Silverman stated:

> [W]e are acting in good faith and we are working together in this regard; and so if there is something that the Court and the Government feels that Mr. Silverman has done wrong, most of those questions have been carefully researched and culled together, and that would be something that I have done wrong as well by sitting here and joining in that part of the defense.

---

Silverman continued to engage in activity contrary to this Court's Orders. The Court certainly agrees [with the Government] that Mr. Silverman has displayed sufficiently egregious behavior to warrant revocation of his *pro hac vice* status. Further, the Court is confident that Mr. Silverman has had adequate notice of his violative conduct and ample opportunity to remedy his behavior. On multiple occasions, this Court has provided Mr. Silverman with notice of how his conduct has violated this Court's Orders. The Court has asked follow-up questions to ensure itself that counsel did in fact understand the Court's directives. Only because this Court has concerns that revocation of Mr. Silverman's *pro hac vice* status at this late juncture might jeopardize his client's Sixth Amendment rights does it opt not grant the Government's motion." Id. at 3-4.

Doc. 330 at 62:3-9. Mrs. Silverman is one of Defendant Mishra's counsel of record and as such she receives notice of all Court orders.[2] Additionally, she was present for the entirety of the trial, including side bar conversations where the Court repeatedly warned Mr. Silverman about how his conduct was violating this Court's Orders and that sanctions would be forthcoming if his conduct continued. Despite this, Mrs. Silverman committed her own violation of the Court's Order regarding evidentiary issues (Doc. 295). During her direct examination of Defendant Mishra, Mrs. Silverman asked the Defendant why he might be concerned about his parents, calling for testimony regarding other pending proceedings against Defendant Mishra's father and the immigration status of Defendant Mishra's mother. The Government properly objected and the Court imposed sanctions in the amount of $1,000.

For the reasons stated above, and pursuant to its contempt authority under 18 U.S.C. § 401, the Court hereby ORDERS that Norman Silverman shall immediately pay $4,300 to the United States District Court Clerk. IT IS FURTHER ORDERED that, pursuant to its contempt authority under 18 U.S.C. § 401, Daphne Silverman shall immediately pay $1,000 to the United States District Court Clerk.

IT IS SO ORDERED.

February 9, 2016                    s\Cathy Bissoon
                                    Cathy Bissoon
                                    United States District Judge
cc (via ECF email notification):

All Counsel of Record

---

[2] The Silvermans practice together under the umbrella of the Silverman Law Group and served as co-counsel to Defendant Mayank Mishra during this case. Attorney Sally Frick also served as co-counsel in this case. As Ms. Frick did not engage in any impropriety during the course of the trial and did not have a major role in the litigation of this case, no sanctions shall be assessed against her.